## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. PIERCE DIVISION

MICHAEL NOEL, KATHLEEN WIKSTEN, and CLAIRE LADOUCEUR, on behalf of themselves and all others similarly situated,

        Plaintiffs,

   v.

MHC HERITAGE PLANTATION, LLC, MHC OPERATING LIMITED PARTNERSHIP, MHC PROPERTY MANAGEMENT, L.P., MHC PROPERTY MANAGEMENT GP, L.L.C. and EQUITY LIFESTYLE PROPERTIES, INC. f/k/a MANUFACTURED HOME COMMUNITIES, INC.,

        Defendants.

No.:  2:21-cv-14492-DMM

## PLAINTIFFS' REPLY IN SUPPORT OF
## REVISED MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT ...................................................................................................... 2

        A.      Article III standing is not eviscerated by the affirmative defenses of release
        or statute of limitations. ..................................................................................... 2

        B.      Rule 23(a) is satisfied. ............................................................................ 3

                1.      Defendants admit that the Class includes lessees of at least 361 mobile
                homes over 20 years, making joinder impracticable. ..................................... 3

                2.      Defendants admit that whether they failed to maintain the stormwater
                drainage system and whether the disrepair of the system was the cause of the
                flooding are common questions. ..................................................................... 3

                3.      Typical of each Class member, Plaintiffs leased lots in the Park. ....................... 5

                4.      Plaintiffs and their counsel have demonstrated the commitment and
                competency required to prosecute the class claims. ........................................ 5

        C.      Rule 23(b)(3) is satisfied. ....................................................................... 6

                1.      Common questions of fact predominate where Defendants' course of
                conduct is the single source of harm – regardless of how many times the conduct
                caused excessive flooding. ............................................................................. 6

                2.      A class action is the superior mechanism for hundreds of senior Class
                members to resolve the common question of whether Defendants' failure to
                maintain the stormwater system caused flooding for hundreds. ................................. 8

        D.      An issues class may be certified under Rule 23(c)(4) given the common
        liability questions. .............................................................................................. 9

        E.      An Injunctive Relief Subclass should be certified under Rule 23(b)(2). .................. 9

        F.      A Class and Subclass of lessees is ascertainable. ..................................... 10

III.    CONCLUSION ................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alhassid v. Bank of Am., N.A.*,
    307 F.R.D. 684 (S.D. Fla. 2015) ......................................................................... 6

*Allapattah Servs. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) ........................................................................ 8

*Arndt v. P & M, Ltd.*,
    837 N.E.2d 398 (Ohio Ct. App. 2005) ................................................................. 8

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) ....................................................................... 10

*Donoff v. Delta Air Lines, Inc.*,
    No. 18-81258, 2020 U.S. Dist. LEXIS 109918, 2020 WL 3268272 (S.D. Fla. Jan. 24,
    2020) ................................................................................................. 3, 6, 7, 8

*Hall v. Sargeant*,
    No. 18-80748, 2020 U.S. Dist. LEXIS 54724, 2020 WL 1536435 (S.D. Fla. Mar. 30,
    2020) .......................................................................................................... 2

*In re Blood Reagents Antitrust Litig.*,
    No. 09-2081, 2015 U.S. Dist. LEXIS 141909, 2015 WL 6123211 (E.D. Pa. Oct. 19,
    2015) .......................................................................................................... 6

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ............................................................................... 6

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
    241 F.R.D. 435 (S.D.N.Y. 2007) ......................................................................... 9

*JSK v. Hendry Cnty. Sch. Bd.*,
    941 F.2d 1563 (11th Cir. 1991) ........................................................................... 2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 2

*Marrero-Rolon v. P.R. Elec. Power Auth.*,
    No. 15-1167, 2018 U.S. Dist. LEXIS 170679 (D.P.R. Sept. 30, 2018) ................................. 6

*Moss v. Am. Priv. Equity, LLC*,
    No. 19-14777, 2021 U.S. App. LEXIS 31165, 2021 WL 4848138 (11th Cir. Oct. 18,
    2021) .......................................................................................................... 2

*Musacchio v. United States*,
    577 U.S. 237 (2016) ........................................................................................ 2

*Navelski v. Int'l Paper Co.*,
    244 F. Supp. 3d 1275 (N.D. Fla. 2017) .......................................................................... *Passim*

*Nolen v. Fairshare Vacation Owners Ass'n*,
    No. 6:20-cv-330, 2021 U.S. Dist. LEXIS 248483, 2021 WL 6125521 (M.D. Fla. Oct.
    15, 2021) ........................................................................................................................... 2

*O'Donnell v. United States*,
    736 F. App'x 828 (11th Cir. 2018) .......................................................................... 7

*Rensel v. Centra Tech. Inc.*,
    2 F.4th 1359 (11th Cir. 2021) ............................................................................... 10

*Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*,
    601 F.3d 1159 (11th Cir. 2010) .......................................................................... 8

*Sheet Metal Workers Local No. 20 Welfare & Ben. Fund v. CVS Pharm., Inc.*,
    540 F. Supp. 3d 182 (D.R.I. May 11, 2021) ............................................................ 6

*Smith v. Ga. Energy United States*,
    259 F.R.D. 684 (S.D. Ga. 2009) .......................................................................... 4

*Tershakovec v. Ford Motor Co.*,
    546 F. Supp. 3d 1348, 1377 (S.D. Fla. July 1, 2021) .................................................. 2

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .......................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ 3, 4

**Rule**

Fed. R. Civ. P. 23 ..................................................................................................... *Passim*

## I.   INTRODUCTION

This is the prototypical case warranting class certification. Certification will facilitate the efficient presentation of the exact same evidence in a single trial on Plaintiffs' claims that Defendants breached their duties under the Prospectus and at common law that would otherwise be presented in individual trials.[1] A single trial, using common evidence, will demonstrate that Defendants failed to adequately maintain or repair the stormwater drainage system in the Park, and that this failure resulted in excessive flooding. Since this proof would be relevant to establishing liability for all Class members, Plaintiffs satisfy Rule 23(b)(3)'s predominance and superiority requirement.

Defendants nonetheless counter that Class members must resort to using "individualized" evidence (that is, evidence as to the state of the stormwater system during each rain event) to prove their claims.  This argument fails for two reasons. First, courts find evidence to be common when the focus is on Defendants' conduct, *i.e.* "what Defendants did"; evidence regarding maintenance and repair of the drainage system is precisely that. Second, the question of when a Class member resided at the Park relates solely to their pro rata share of an aggregate damage award, not proof of Defendants' continuous breach of the Prospectus and common law duties.

Likewise, Plaintiffs satisfy all Rule 23(a) elements. First, numerosity is established through Defendants' admissions in their SEC filings and Answer. Second, Defendants admit that Plaintiffs have identified common questions of fact, including whether Defendants failed to adequately maintain and repair the storm water drainage system and whether the disrepair of the system was the cause of the flooding in the Park. Next, Plaintiffs are typical of Class members because all paid rent that was supposed to be used, in part, to maintain Park infrastructure, but was not. Finally, with Plaintiff Claire Ladouceur residing in the Park since 2002,[2] Plaintiffs are adequate to represent a Class defined as "All persons who leased a lot in the Heritage Plantation mobile home park since October 6, 2003." Plaintiffs are also adequate to represent a Rule 23(b)(2) subclass for their injunctive relief claims defined as: "All persons who are currently leasing a lot in the Heritage Plantation mobile home park," as of the date the class is certified ("Injunctive Relief Subclass"). The Motion should be granted.

---

[1] All defined terms used herein have the same meaning as in Plaintiffs' Revised Motion for Class Certification (the "Motion") [DE 50].

[2] Ladouceur Dep. at 4 [DE 59-1].

## II.   ARGUMENT

### A.   Article III standing is not eviscerated by the affirmative defenses of release or statute of limitations.

Article III standing requires Plaintiffs to demonstrate: (1) an actual or imminent injury or a concrete invasion of a legally protected interest, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants do not and cannot contest that Plaintiffs meet these requirements: (1) Plaintiffs have suffered an actual injury caused by the incessant flooding that interferes with their use and enjoyment of the Park and their mobile homes; (2) the cause of their injury is Defendants' failure to adequately maintain and repair the stormwater drainage system at the Park; and (3) Plaintiffs' injuries are redressable in this lawsuit. Plaintiffs have Article III standing. *See id.* at 560-61.

Arguing that Plaintiffs lack standing, Defendants ignore Article III's requirements. Rather, Defendants camouflage their affirmative defenses of release and statute of limitations as a challenge to standing. *See* Opp. at 10-12 (lack of standing based on a release in the "long-term" rent agreement ("LTA") and based on statute of limitations) [DE 66]. However, it is well settled that "[s]tatutes of limitations and other filing deadlines 'ordinarily are not jurisdictional.'" *Musacchio v. United States*, 577 U.S. 237, 246 (2016) (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013)).[3] Likewise, "release is an affirmative defense which must be pled." *Moss v. Am. Priv. Equity, LLC*, No. 19-14777, 2021 U.S. App. LEXIS 31165, at \*1, 2021 WL 4848138 (11th Cir. Oct. 18, 2021).[4] Plaintiffs have standing, and the affirmative defenses are not an obstacle to class certification.[5]

---

[3] *See also JSK v. Hendry Cnty. Sch. Bd.*, 941 F.2d 1563, 1570 (11th Cir. 1991) (holding that "'the statute of limitations is an affirmative defense'" and is not jurisdictional) (quoting *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990) (citing Fed. R. Civ. P. 8(c))); *Nolen v. Fairshare Vacation Owners Ass'n*, No. 6:20-cv-330, 2021 U.S. Dist. LEXIS 248483, at \*11, 2021 WL 6125521 (M.D. Fla. Oct. 15, 2021) ("a potential statute of limitations defense does not negate standing").

[4] *See also Hall v. Sargeant*, No. 18-80748, 2020 U.S. Dist. LEXIS 54724, at \*25, 2020 WL 1536435 (S.D. Fla. Mar. 30, 2020) ("the releasee can raise the release as an affirmative defense to the releasor's complaint.").

[5] *Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1377 (S.D. Fla. July 1, 2021) ("'The general rule, regularly repeated by courts in many circuits, is that courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.'") (quoting *Brown v. Electrolux Home Prod., Inc.*, 817

2

### B. Rule 23(a) is satisfied.

#### 1. Defendants admit that the Class includes lessees of at least 361 mobile homes over 20 years, making joinder impracticable.

Defendants argue there is "[n]o reliable evidence of numerosity." Opp. at 13 (citing *Donoff v. Delta Air Lines, Inc.*, No. 18-81258, 2020 U.S. Dist. LEXIS 109918, 2020 WL 3268272 (S.D. Fla. Jan. 24, 2020) (Middlebrooks, J.)). But in *Donoff*, the plaintiff only offered a bald assertion that the class consisted of "hundreds of thousands." *Donoff*, 2020 U.S. Dist. LEXIS 109918, at *10. Here, by Defendants' own admissions, the Park contains 437 mobile home sites and 401 mobile homes, of which 40 are owned by an ELS entity.[6] Rule 23(a)(1) is easily satisfied here through reliable evidence.

#### 2. Defendants admit that whether they failed to maintain the stormwater drainage system and whether the disrepair of the system was the cause of the flooding are common questions.

While conceding that Plaintiffs have identified common questions of fact, including whether Defendants failed to adequately maintain the storm water drainage system and whether its disrepair was the cause of flooding, they argue that "Plaintiffs do not identify any common questions of law." Opp. at 13. While Plaintiffs have indeed identified common questions of law since Florida law applies, Rule 23(a)(2) only requires one or the other. Fed. R. Civ. P. 23(a)(2).

Moreover, Defendants' itemization of questions as to who, what, when, where, and why reinforces that a number of common fact questions exist for which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). *See also* Opp. at 13. These include:

| DEFENDANTS' QUESTIONS | COMMON EVIDENCE WILL PROVIDE ANSWERS |
|---|---|
| When during the 20-year course of time was maintenance and repair inadequate? | Defendants' and their contractors' records will reflect maintenance and repair of the storm water system (or lack thereof). *See* Ross Decl. [DE 50-2], ¶ 17; Rothbart Decl. [DE 50-32], ¶ 48. |
| When (and for how long) did the events of flooding occur? | Publicly-available historical weather records will identify storm events. *See* Rothbart Decl., ¶ 69. The flood levels will be tracked in Defendants' records and witness accounts. *Id.*, ¶ 68; *see, e.g.*, |

---

F.3d 1225, 1240 (11th Cir. 2016).

[6] Am. Cmpl., ¶ 11; Answer, ¶ 11 (admits); Ruby Decl. [DE 62], ¶¶ 4, 10. *See also* Ellenberger Decl. [DE 50-1], Ex. A, p. 28 (ELS's Form 10-K).

3

| DEFENDANTS' QUESTIONS | COMMON EVIDENCE WILL PROVIDE ANSWERS |
|---|---|
| | Aronowitz-Bedoya Decl. [DE 50-9], Ex. C–F (emails from Park manager about flooding and weather events at the Park). |
| Where in the Park did flooding occur during a particular flooding event? | The flood levels will be tracked in Defendants' records and witness accounts. Rothbard Decl., ¶ 68; *see, e.g.,* Aronowitz-Bedoya Decl. [DE 50-9], Ex. C–F (emails from Park manager about flooding and weather events). |
| What historical flooding events were caused by inadequate maintenance? | Defendants' and their contractors' records will reflect maintenance and repair of the storm water system (or lack thereof). *See* Ross Decl., ¶ 17; Rothbart Decl., ¶ 48. Publicly-available historical weather records will identify storm events. *See* Rothbart Decl., ¶ 69. The flood levels will be tracked in Defendants' records and witness accounts. *Id.,* ¶ 68. And engineering experts will testify as to how Defendants' failure to maintain the stormwater system caused flooding or historic flooding. Ross Decl., ¶ 12.b. |
| Who resided in the Park? | Defendants have records of their leases and rent collections. Rothbart Decl., ¶¶ 48, 50. |

All of these questions will "generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (emphasis in original).

Moreover, it is irrelevant whether the flooding was a one-time event, as in *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017), or a continuing event, as here, because all events are tied to Defendants' conduct. *See, e.g., Smith v. Ga. Energy United States*, 259 F.R.D. 684, 692 (S.D. Ga. 2009) (granting class certification where "Defendants' pump-rigging was a long-term scheme," the "historical data … show that the gasoline fuel pumps … were miscalibrated frequently for years before suit was filed," and "a jury could conclude that this conduct was part of a long-term plan to cheat the motoring public."). As in *Navelski*, the common questions include whether Defendants adequately maintained infrastructure and whether the flooding was caused by the failure of that infrastructure. *See Navelski*, 244 F. Supp. 3d at 1305-06. Defendants admit that these questions are common. *See* Opp. at 13. Just because Defendants thought they could get away with a deficient stormwater drainage system for years does not mean that common questions do not exist. Plaintiffs have satisfied Rule 23(a)(2).

4

### 3. Typical of each Class member, Plaintiffs leased lots in the Park.

Defendants' first argument that Plaintiffs are not typical because they lack standing should be rejected. *See* Opp. at 14; Section A, *supra*. Defendants next argue that Plaintiffs' claims are not typical because some Class members might have experienced flooding in common areas and others might have suffered flooding of their lots. Opp. at 12, 14 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). In *Kornberg*, the Eleventh Circuit made clear that typicality "does not require identical claims or defenses." The court ruled that Rule 23(a)(3) was satisfied, despite differences in extent of damages and affirmative defenses:

> That plaintiffs may have suffered greater damage than other passengers because of the severity of the problem … does not render them atypical. Differences in the amount of damages between the class representative and other class members does not affect typicality. * * * That Carnival may have a stronger defense against many passengers does not render plaintiffs atypical. Plaintiff's claim and Carnival's defenses against that claim are not markedly different than the claims of the rest of the class. * * *

*Id.* at 1337 (citations omitted). *See also Navelski*, at 1306 (the fact that individual homes within the proposed class area did not all flood at the exact same time does not, as defendant argues, render plaintiffs' claims atypical). Here, where all Class members were charged rents designated for repair of the system, but not used for such purpose, and were affected by the flooding (whether through having to vacate their homes, not being able to return to their homes, being stuck in their homes, or having their homes damaged), Plaintiffs have satisfied Rule 23(a)(3).

### 4. Plaintiffs and their counsel have demonstrated the commitment and competency required to prosecute the class claims.

Defendants do not challenge Plaintiffs' counsel's adequacy to represent the Class. Moreover, Defendants' argument that former tenants will not be interested in injunctive relief is rectified through the Injunctive Relief Subclass, which is comprised only of current lessees.

Defendants next rehash their typicality argument, asserting a "conflict" between (i) Class members who acquired their homes at diminished values whereas others allegedly did not; and (ii) Class members who suffered flooding on their lots whereas others allegedly did not. Opp. at 15. As discussed *supra*, differences in experiences and damages cannot defeat class certification. *See Navelski*, 244 F. Supp. 3d at 1306. Plaintiffs will adequately represent the interests of all Class members. *See, e.g.*, Ladouceur Dep. [DE 59-1] at 93-94 (testifying that she understands her duties as a class representative); Noel Decl. [DE 50-5], ¶¶ 24, 27; Wiksten Decl. [50-6], ¶¶ 18, 20, 23. Plaintiffs have therefore satisfied Rule 23(a)(4).

5

### C. Rule 23(b)(3) is satisfied.

#### 1. Common questions of fact predominate where Defendants' course of conduct is the single source of harm – regardless of how many times the conduct caused excessive flooding.

Defendants believe that Plaintiffs cannot prove their case with common evidence because the trier of fact would have to examine whether the stormwater drainage system failed or was inadequate during each flood event. Opp. at 17-18. This argument fails on the most basic of levels. To understand why, one need only start with the definitions of "common" evidence and "individualized" evidence.

Common evidence proves "what *defendants* did."[7] "Individualized evidence" focuses on what *class members* did.[8] Of course, Defendants—not Plaintiffs—maintained, fixed, and repaired (or not) the stormwater drainage system throughout the Class Period. So, Defendants' classification of evidence of repairs and rain events as "individualized" fails to accord with the definition of the term itself.

Aside from the law on Rule 23(b)(3), another basis exists for rejecting Defendants' argument: Defendants had not produced a single document or any data prior to the filing of Plaintiffs' motion for class certification and have produced just 502 pages (after the May 24, 2022 filing of Plaintiffs' Expedited Motion to Compel [DE 70]) to date despite 20 years of Park management. Some of the very facts Defendants argue in opposition to class certification concern the subjects of withheld documents. In analogous situations, courts preclude defendants from asserting that the plaintiffs have failed to fulfill their burden.[9]

---

[7] *See, e.g., In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (common issues of fact "predominate here because 'the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.'") (quotations omitted).

[8] *Alhassid v. Bank of Am.*, *N.A.*, 307 F.R.D. 684, 697 (S.D. Fla. 2015) (common issues of fact do not predominate where it "would require individual evidence" that mortgage company "mistakenly called a particular loan due or commenced foreclosure proceedings" for an individual class member); *Donoff*, 2020 U.S. Dist. LEXIS 109918, at *15 ("Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member.")

[9] *See, e.g., Sheet Metal Workers Local No. 20 Welfare & Ben. Fund v. CVS Pharm., Inc.*, 540 F. Supp. 3d 182, 219 (D.R.I. May 11, 2021) (granting class certification over defendant's objection to the type of data used to calculate damages, stating "It is true that the model has not been tested using [third party payor] data, but the shortcomings of Plaintiffs' data are directly attributable to Defendants' strategic decision [to withhold discovery] and will be resolved at the liability stage.");

This Court has instructed that, to determine predominance, "a district court first must 'identify the parties' claims and defenses and their elements' and 'then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial.'" *Donoff*, 2020 U.S. Dist. LEXIS 109918, at *14-15 (internal quotations omitted). Defendants have failed to properly undertake this analysis.

Plaintiffs' breach of contract claim under Florida law requires a contract, a material breach of that contract, and damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Here, the trier of fact can assess that the basis of Plaintiffs' and the Class's contract claim is a single document – the Prospectus. The Prospectus does not differ by Class member and has been exactly the same for the entire Class Period, providing that "[t]he storm drainage system, as provided, is the responsibility of the Park." Prospectus [DE 49-4, 49-5] § VII.E. Whether Defendants fulfilled that responsibility or breached the Prospectus is a common question completely untethered from any individualized evidence. Moreover, disgorgement of the rents collected that should have been – but were not – used to maintain the system is a class-wide damages issue that can be calculated from Defendants' books.

The same is true regarding Plaintiffs' negligence claim. To establish negligence under Florida law, a party must allege a duty, a breach, proximate cause, and damages. *O'Donnell v. United States*, 736 F. App'x 828, 831 (11th Cir. 2018). Here, the trier of fact will determine whether Defendants had a duty to provide and maintain the storm water system at the Park, and whether they breached that duty by failing to do so. The trier of fact will then assess whether the breach proximately caused the flooding or more flooding than if the Defendants had fulfilled their duty. Defendants admit that "[t]he *manner* by which Plaintiffs allege Defendants breached the contract or were negligent may be the same (by failing to "adequately maintain" the storm drainage system over the course of decades)." Opp. at 17. Yet to avoid this conclusion, Defendants argue that the

---

*Marrero-Rolon v. P.R. Elec. Power Auth.*, No. 15-1167, 2018 U.S. Dist. LEXIS 170679, n.7 (D.P.R. Sept. 30, 2018) (granting class certification, stating: "Further, discovery was bifurcated at the behest of Defendants. [] Defendants cannot use the bifurcation of discovery as both a sword and a shield, and fault Plaintiffs for any evidentiary gaps caused by the bifurcation order."); *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 U.S. Dist. LEXIS 141909, 2015 WL 6123211, at *53-55 n.15 (E.D. Pa. Oct. 19, 2015) (recertifying class and rejecting defendant's attack on plaintiffs' use of proxy data in lieu of defendant's actual data explaining: "The Court is concerned about defendant's use of its failure to produce reliable cost data as both a sword and shield in this case.").

question of duty may differ over time and by event, *e.g.*, Hurricane Irma. Opp. at 17. The type of storm, however, has nothing to do with Defendants' obligation under the Prospectus and at common law to provide a working storm water system. Indeed, Defendants' argument that "the age, maintenance history and status of repair of the storm water system var[ying] over the course of the 20 years [is] at issue" does not defeat commonality – *it establishes it. See* Opp. at 17. This is just the type of evidence that *is* common to the Class and will be used to try Plaintiffs' claims.

The fact that some Plaintiffs may have suffered different types of personal property losses than others also does not defeat predominance. *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."), *aff'd*, 545 U.S. 546 (2005). *See also Navelski*, 244 F. Supp. 3d at 1309 ("The need for individualized damages determinations, however, does not prevent a finding that common issues predominate."). This is especially true where Plaintiffs have proposed that any individual damages claims can be bifurcated and proceed after liability is established on a class-wide basis. *See* Motion at 24-25.

This case is nothing like *Donoff*, cited by Defendants, where there were over 1,000 different trip insurance offers so there was variability regarding the elements of a deceptive practice under FDUTPA. 2020 U.S. Dist. LEXIS 109918, at *16. Instead, this case is akin to *Navelski* and *Arndt v. P & M, Ltd.*, 837 N.E.2d 398 (Ohio Ct. App. 2005), neither of which Defendants attempt to distinguish. In both cases, courts found claims arising out of flooding suitable for class treatment.

Common proof is similarly required with respect to Plaintiffs' other claims, including breach of the covenant of quiet enjoyment, trespass, and constructive eviction. *See Navelski*, 244 F. Supp. 3d at 1309 n.35 (common proof required even if "a number of putative class members did not experience flooding. That some Class members ultimately may not be successful on the trespass claim does not defeat certification where common issues otherwise predominate.") (citing cases). Plaintiffs have established that common questions of fact and law predominate.

**2. A class action is the superior mechanism for hundreds of senior Class members to resolve the common question of whether Defendants' failure to maintain the stormwater system caused flooding for hundreds.**

Superiority focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010). Defendants claim, without citation, that a class action is not the superior or only mechanism to resolve Plaintiffs'

claims. Opp. at 19. Yet Defendants do not and cannot argue that individual actions would be the superior method to resolve individual Class member's claims. Class members, who are all over age 55, would not have the resources to prosecute individual claims involving complex and expensive engineering analyses against a public company. Even if they did, to litigate the cases individually would be inefficient considering that all of the evidence that bears on liability is the same. Instead, this Court can and should resolve this matter in a single proceeding rather than conduct the wasteful repetition of hundreds of individual trials on liability. A class is not only superior, but the *only practicable* way to proceed.

### D. An issues class may be certified under Rule 23(c)(4) given the common liability questions.

Alternatively, this Court should certify a liability-only issues Class under Rule 23(c)(4) and bifurcate damages. Defendants unsuccessfully attempt to distinguish the cases on which Plaintiffs rely, *Navelski* and *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 241 F.R.D. 435 (S.D.N.Y. 2007), as "single incident tragedies" or "all-or-nothing" causation cases. Opp. at 19. This is a distinction without a difference, and Defendants fail to explain their argument.

The *Navelski* court certified a liability-only class and bifurcated individualized damages issues. *Id.*, 244 F. Supp. 3d at 1310. In *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, the court stated that even if Rule 23(b)(3) was not satisfied, "the actions still could be certified under Rule 23(c)(4)(A), as this is the "preferred rule for certifying a class in the Second Circuit when individual damages need to be calculated individually." *Id.*, 241 F.R.D. at 448, n.112 (citing cases). The courts' decisions were not influenced by the fact that liability was a "one time event;" rather, the calculation of damages informed the courts' decisions.

Defendants next rehash their argument that Plaintiffs have not established predominance (Opp. at 19-20); to avoid repetition, Plaintiffs incorporate their reply to that argument *supra*. Accordingly, certification under Rule 23(c)(4) is appropriate.

### E. An Injunctive Relief Subclass should be certified under Rule 23(b)(2).

Plaintiffs alternatively propose Rule 23(b)(2) certification of the Injunctive Relief Subclass. Defendants summarily argue that it would be inappropriate to establish such a class, "where the relief sought equates to a declaration of liability." Opp. at 15-16 (citing *Marino v. Home Depot USA, Inc.*, 245 F.R.D. 729, 736 (S.D. Fla. 2007) (Middlebrooks, J.)).

In *Marino*, this Court held that a Rule 23(b)(2) class was inappropriate because there was no pre-existing cohesiveness among class members other than having their carpet installed by the

defendant. *Id.* "Subdivision (b)(2) by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests." *Id.* (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 and 1156 (11th Cir. 1983) (internal citations omitted)). In contrast here, the Subclass members had a pre-existing cohesiveness in that they are all residents of the same Park, governed by the same Prospectus, paying rent for the same services and upkeep of Park infrastructure, and interested in ensuring that their homes maintain their value.

Thus, unlike *Marino*, Plaintiffs' requested relief is not equivalent to a declaration of liability. Instead, Plaintiffs will present the evidence to a trier of fact to determine whether Defendants have a duty under the Prospectus and at common law to maintain the stormwater system and whether they breached that duty, with the proposed remedy requiring Defendants to remedy the disrepair. Am. Cmpl., p. 51. Accordingly, Plaintiffs' injunctive relief claims are appropriate for class treatment under Fed. R. Civ. P. 23(b)(2).

### F.  A Class and Subclass of lessees is ascertainable.

Plaintiffs seek certification of a Class and Injunctive Relief Subclass, both of which are comprised of persons who leased a lot in the Park. Defendants recognize that Plaintiffs' class definition contains the objective criteria of (i) leasing a lot in the Park (ii) after or as of a date certain. Nonetheless, Defendants assert that the definition is unclear because "it does not even require that a class member have suffered any harm." Opp. at 12.

First, Plaintiffs have asserted that every Class member suffered harm by paying rents that, according to the common contract at issue (the Prospectus), were supposed to be used to maintain the stormwater drainage system but were not. Accordingly, all Class members suffered harm – regardless of their ability to access the Park during flood events or damage to their mobile homes.

Moreover, Defendants' position goes beyond what the Eleventh Circuit requires. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) ("…we limit ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination."). Because class membership is capable of determination by reference to objective, verifiable criteria, the Class is ascertainable. *Rensel v. Centra Tech. Inc.*, 2 F.4th 1359, 1369 (11th Cir. 2021). *See also Navelski*, 244 F. Supp. 3d at 1305 (class is ascertainable where "the proposed class boundaries are defined in objective terms as including only individuals who were homeowners in [certain] subdivisions in Cantonment, Florida as of April 29, 2014"). Accordingly, class certification is appropriate.

### III.    CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion, certify the proposed Class and Injunctive Relief Subclass, and grant such other and further relief as this Court deems appropriate.

Dated: May 27, 2022

Respectfully submitted,

By: */s/ Robert C. Gilbert*
ROBERT C. GILBERT, FBN 561861
gilbert@kolawyers.com
DANIEL E. TROPIN, FBN 100424
tropin@kolawyers.com
KOPELOWITZ   OSTROW   FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Blvd., Ste. 1100
Coral Gables, FL  33134
Telephone: (305) 384-7269

ELIZABETH A. FEGAN (*pro hac vice*)
beth@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019

LYNN A. ELLENBERGER (*pro hac vice*)
lynn@feganscott.com
FEGAN SCOTT LLC
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Telephone: (412) 346-4104
*Attorneys for Plaintiffs and the Proposed Class*

11

**CERTIFICATE OF SERVICE**

I, Robert C. Gilbert, an attorney, certify that I caused the foregoing to be filed on May 27,

2022 via CM/ECF which will serve all attorneys of record electronically.


By:   */s/ Robert C. Gilbert*
ROBERT C. GILBERT, FBN 561861
gilbert@kolawyers.com
KOPELOWITZ   OSTROW   FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Blvd., Ste. 1100
Coral Gables, FL  33134
Telephone: (305) 384-7269

12