**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. PIERCE DIVISION**

| | | |
|---|---|---|
| MICHAEL NOEL, KATHLEEN WIKSTEN, and CLAIRE LADOUCEUR, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:21-cv-14492-DMM |
| MHC HERITAGE PLANTATION, LLC, MHC OPERATING LIMITED PARTNERSHIP, MHC PROPETY MANAGEMENT, L.P., MHC PROPERTY MANAGEMENT GP, L.L.C., and and EQUITY LIFESTYLE PROPERTIES, INC. f/k/a MANUFACTURED HOME COMMUNITIES, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EXPERT REPORT OF JEFFREY S. ROTHBART SUBMITTED IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs Michael Noel, Kathleen Wiksten, and Claire Ladouceur, on behalf of themselves and all others similarly situated, file this Opposition to Defendants' Motion to Strike Expert Report of Jeffrey S. Rothbart in Support of Plaintiffs' Motion for Class Certification ("Mot.") [DE 60].

## I.      INTRODUCTION

Jeffrey S. Rothbart's opinion that methodologies exist to calculate class-wide damages using Defendants' records and publicly-available data meets the requirements set out in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993), including "qualification, reliability, and helpfulness."  *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). *See also* Declaration of Jeffrey S. Rothbart ("Rothbart Decl.") [50-32].  First, Mr. Rothbart is qualified.

With a law degree and LLM in taxation, Mr. Rothbart has worked for nearly two decades in all areas of residential and commercial real estate, and has been qualified by other courts as an expert in real estate matters. In fact, Defendants admit that Mr. Rothbart has "a track record of work in commercial real estate…." Mot. at 4.

Second, Mr. Rothbart's opinions are reliable. He has set forth methodologies for calculating damages relating to relocation costs, overpayment of rent, replacement costs, and loss of use. He explained that the inputs for these formulae will be contained in Defendants' books and records and publicly-available information, which is capable of judicial notice.  Defendants' arguments do not strike at the heart of the methodologies, but instead attempt to challenge them by bald, unsupported complaints.

Finally, Mr. Rothbart's explanation of the data available in the real estate industry and the methods for calculating damages will be helpful to this Court in analyzing whether damages can be calculated on a class-wide basis.

Based on the foregoing, Defendants' motion to strike should be denied.

## II.    RELEVANT FACTS

Mr. Rothbart is an expert with "over 19 years of institutional, commercial and residential real estate experience…." Rothbart Decl., ¶ 1.  He has a B.A. from Emory University, a J.D. from IIT-Chicago Kent College of Law, an LL.M. in Taxation from Northwestern University, a Certificate in Hotel Real Estate and Asset Management from Cornell University, and a Certificate in Real Estate Investment and Development from Rice University Jones Graduate School of Business. *Id*., ¶ 2.

Over the course of his career, he has participated in over $3 billion of commercial and residential real estate transactions, across property types, geography and risk profile.  *Id*., ¶ 3.  For

the majority of his career, he also served as de facto General Counsel for Stack Real Estate, LLC, and in that role, he was charged with, among other things, the review of all property operations and management agreements. *Id*., ¶ 4 & Ex. A.

Mr. Rothbart has published over 40 articles and research reports on the commercial real estate markets. *Id*., ¶ 5 & Ex. A.  He has also consulted, either as an expert witness or on a third-party basis, in over 100 matters.  His previous clients include municipalities, public REITs, governmental agencies, universities, religious institutions, insurance companies, creditors to bankruptcy, equity investors, developers, general contractors, property owners, tenants and individual homeowners.  *Id*., ¶ 6.

Mr. Rothbart is also an Adjunct Professor of Law at IIT-Chicago Kent College of Law, and he is a licensed Illinois attorney, a licensed Illinois Real Estate Broker, formerly a LEED-AP for New Construction v2.2, and formerly held NASD/FINRA Series 22 and 63 licenses. He has been a "market participant" for the PwC Korpacz Real Estate Investor Survey since approximately 2006.  He is also a Certified Mediator through the National Association of Certified Mediators. *Id*., ¶ 7.

In his declaration, Mr. Rothbart states that "his report is preliminary as discovery is ongoing" (*id.*, ¶ 11), and based upon the information in his possession, he opines that "class-wide damages can be calculated for residents of a mobile home park where promised infrastructure or services were not provided by the mobile home park's owners or operators." *Id*., ¶ 13.[1]  Mr. Rothbart explains that several categories of "damages can be calculated based on information that should be in Defendants' books and records, publicly available and third-party data, and the analysis of the engineering expert." *Id*., ¶ 15.

---

[1] Mr. Rothbart filed his declaration before Defendants produced a single document in discovery. *See* [DE 70].

First, he explains that, if the Court determines that the Class was constructively evicted due to flooding, the cost to relocate the Class members' mobile homes can be calculated on a class-wide basis, using the following formulae:

$$CED = sum(SW*CSW, DW*DSW) \ or$$
$$(SW*CSW) + (DW*DSW) = CED$$

He explains that CED is class-wide constructive eviction damages and it equals the sum of the number of single-wide mobile homes in the Heritage Plantation mobile home park (SW) multiplied by the cost to move those homes (CSW) plus the number of double-wide mobile homes (DW) multiplied by the cost to move those homes (DSW).  The cost to move the homes, whether single or double, will be estimated by information provided by full-service transport companies.  *Id.*, ¶¶ 25-43.

Second, Mr. Rothbart opines that rental overcharges, comprised of the amount that should have been spent by Defendants to maintain or fix the storm-water system, can be calculated on a class-wide basis.  *Id.*, ¶¶ 44-47.  Mr. Rothbart explains that he will analyze Defendants' books and records and the engineering expert's analysis to compare "Defendants' budget for the maintenance and repair of the storm water drainage system, the actual expenditures Defendants made (or lack thereof) relating to the storm water drainage system, the engineering analysis of the expenditures that should have been made, and how the rents were actually used by Defendants to determine the aggregate rental amounts by which the Class members overpaid or which should be disgorged." *Id.*, ¶ 49.

Third, Mr. Rothbart opines that diminution in value or replacement cost can be calculated on a class-wide basis using available data. Because of the "stigma" that affects property resale after an event such as flooding, a mobile home can be valued like an automobile. Such stigma damages can be calculated using several different valuation techniques, including replacement

costs analysis. *Id.*, ¶¶ 51-55.  According to Mr. Rothbart, replacement cost – or the cost to rebuild a similar building using current prices for building material and labor – can be calculated based on the following formula:

$$RC = sum(SW*BL, DW*BL) \text{ or}$$
$$(SW*BL) + (DW*BL) = RC$$

RC is replacement cost, and it is calculated by adding the number of single-wide homes (SW) multiplied by the cost of building material and labor (BL) with the number of double-wide homes (DW) multiplied by the cost of building material and labor (BL). *Id.*, ¶¶ 56-58.

Alternatively, according to Mr. Rothbart, replacement cost damages can be calculated by the following formula:

$$RC = sum(SW*SASP, DW*DASP) \text{ or}$$
$$(SW*SASP) + (DW*DASP) = RC$$

This formula adds the number of single-wide homes (SW) multiplied by the average sales price for single-wide manufactured homes in the South (SASP) plus the number of double-wide homes (DW) multiplied by the average sales price for double-wide manufactured homes in the South (DASP).  The "average sales price" in the above formula is derived from the Manufactured Housing Survey (MHS), produced by the U.S. Commerce Department's Census Bureau, and published monthly and organized by region.  *Id.*, ¶¶ 59-66.

Finally, Mr. Rothbart opines that damages for the Class's loss of use of their residence can be calculated on a class-wide basis using available data in the below formula:

$$LU = sum(SW*SRV*Days, DW*DRV*Days) \text{ or}$$
$$(SW*SRV*Days) + (DW*DRV*Days) = LU$$

LU is loss of use damages and can be calculated by multiplying the number of single-wide homes (SW) by the reasonable rental value for single-wide homes (SRV) by the number of days that ingress or egress to the homes was restricted because of flooding. This would be added to the

5

number of double-wide homes (DW) multiplied by the reasonable rental value for single-wide homes (DRV) by the number of days that ingress or egress to the homes was restricted because of flooding. *Id.* at 72-73, 76-78. The "reasonable rental value" in the formula can be calculated based upon multiple sources, including HUD data and considering the particular region. *Id.*, ¶¶ 74-75. Dates of loss of use will be calculated using Defendants' books and records, including when the Park manager told residents to evacuate, to refrain from returning to their residences, and to avoid driving on Park streets.  This information can then be compared with publicly available weather data and the engineer's analysis.  *Id.*, ¶¶ 67-71.

Defendants move to strike each and every aspect of Mr. Rothbart's declaration, and do not proffer any expert opinions in response.  Defendants did not attach a meet and confer certification to their motion pursuant to L.R. 7.1, because there was no meet and confer.

### III.    ARGUMENT

#### A. Standards.

An expert's opinion is admissible if it meets the following criteria: (1) the expert is sufficiently qualified to testify about the matters he intends to address; (2) the methodology used is "sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue." *Daubert*, 509 U.S. at 589; *see also Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373, 2012 U.S. Dist. LEXIS 190723, *4-5 (S.D. Fla. Dec. 4, 2012) (Middlebrooks, J.). These criteria are referred to as "qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F.3d at 1260.  Federal judges perform a gatekeeping role to ensure that speculative opinions do not reach the jury. *Kunzelmann*, 2012 U.S. Dist. LEXIS 190723, at *5. However, the court's gatekeeping function "is not intended to supplant

the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

### B.  Mr. Rothbart is qualified as an expert on damages in real estate matters.

A party must show that its expert has sufficient "knowledge, skill, experience, training, or education" to form a reliable opinion about an issue that is before the court.  *drix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010); *see also* Fed. R. Evid. 702(a) (an expert witness must have "scientific, technical, or other specialized knowledge").  This standard is "not stringent" and all that is required is that the witness is "minimally qualified." *drix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009). This is because objections to the level of an expert's expertise go to credibility and weight, not to admissibility.  *Id.*

Mr. Rothbart has "19 years of institutional, commercial and residential real estate experience…."  Rothbart Decl., ¶ 1 [DE 50-32].  He has a law degree, an LL.M. in taxation, and certificates in real estate and asset management and real estate investment and development. Mr. Rothbart has worked in the field of real estate in various capacities, including as an attorney, research director, principal, managing director, vice president of finance and asset management, vice president of capital markets, general counsel, law professor, and expert witness.  Based on his experience, courts have held that Mr. Rothbart has "sound" qualifications "as a real estate expert and tax lawyer." *Oak Creek Inv. Props. v. Am. Elec. Power Serv. Corp.*, No. No. 4:18-cv-4009, 2020 U.S. Dist. LEXIS 157032, at *16, 2020 WL 5089391 (W.D. Ark. Aug. 28, 2020).[2] *See also Matter of Rite Aid of N.Y. No. 4928 v. Assessor of Town of Colonie*, 58 A.D.3d 963, 995-96 (N.Y.

---

[2] Defendants point out that the *Oak Creek* court did not admit Mr. Rothbart's opinions in that case. Mot. at 12.  The court's decision, however, was based on the facts and issues in that particular case, but it nevertheless found Mr. Rothbart *qualified* in a case involving mobile homes.  *Oak Creek Inv. Props.*, 2020 U.S. Dist. LEXIS 157032, at *16.

Sup. Ct. 2009) (declining to disturb lower court crediting the testimony of respondents' experts, of which Mr. Rothbart was one of two, as to a property valuation).[3]  Mr. Rothbart is qualified to render opinions regarding methodologies for the calculation of class-wide damages here.

While Defendants begrudgingly admit that Mr. Rothbart has "a track record of work in commercial real estate" (Mot. at 4), Defendants contend that Rothbart is not a qualified expert witness for "residential mobile homes, stormwater systems in mobile home communities, or meteorological events." Mot. at 8.

Defendants first complain that Mr. Rothbart does not have experience involving residential mobile homes. *Id.* But "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). Defendants cannot contend, *e.g.*, that the calculation of rents in the Park is any different than other landlord-tenant scenarios in residential or commercial settings. Moreover, this Court has credited an expert's experience in the industry – such as Mr. Rothbart's 19 years of legal, financial, and practice experience in real estate – when finding an expert qualified.  *See Kunzelmann*, 2012 U.S. Dist. LEXIS 190723, at *7-8.

Defendant's next objection, that Mr. Rothbart does not have the knowledge of stormwater

---

[3] Defendants also claim that Mr. Rothbart is not qualified because his opinion was stricken in *J.G. Wahlert v. Kovitz Shifrin Nesbit*, No. 17 C 8055, 2012 U.S. Dist. LEXIS 208165, at *16, n.2, 2021 WL 5280942, at *6, n.2 (N.D. Ill. Nov. 12, 2021) because it contained legal conclusions.  Mot. at 12.  Here, however, despite Defendants' assertions (Mot. at 2), Mr. Rothbart does not make any conclusions of law, including regarding class certification.  Instead, Mr. Rothbart offers a preliminary opinion that Plaintiffs' damages can be calculated on a class-wide basis by using Defendants' information and public information.  Rothbart Decl., ¶ 13. Similarly, Defendants' attempt to undercut Mr. Rothbart's qualifications by pointing to *Regis Metro Assocs. v. NBR Co., LLC*, No. 20-cv-02309, 2012 U.S. Dist. LEXIS 208165, at *29, n.12 (N.D. Cal. Jan. 28, 2022) is misplaced because there, the court determined that Mr. Rothbart's opinion was not relevant to the issue at hand.

systems in mobile home communities (Mot. at 8), is misplaced. Mr. Rothbart does not purport to be an expert in stormwater systems. "An expert witness, however, may assume liability for purposes of calculating damages, which is what Mr. [Rothbart] has done. *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ, 2011 U.S. Dist. LEXIS 62969, *10, 2011 WL 2295269 (S.D. Fla. June 7, 2011).[4]  For any such issues, Mr. Rothbart will rely on the "analysis of the engineering expert."  Rothbart Decl., ¶ 15.

Defendants' final complaint, that Mr. Rothbart is not qualified to interpret publicly available information regarding meteorological events (Mot. at 8), is ironic.  Defendants' Regional Vice President, Everrett Butler, relied on "simple google searches" and National Weather Service data in attempting to explain the flooding problems at the Park when answering Defendants' interrogatories. *See* ELS's Response to Interrogatory No. 15, attached as Exhibit A (relying on "simple google searches" and the National Weather Service's record of a gale, excessive rainfall, and Hurricane Irma to explain flooding in the Park). Publicly-available data from the National Weather Service is of the type that courts regularly take judicial notice – without the need for expert qualification or interpretation.[5] *See, e.g., Pats of Henderson Seafood & Steaks Inc. v. Wesco*

---

[4] *See also Orthofix Inc. v. Gordon*, No. 1:13-cv-01463, 2016 U.S. Dist. LEXIS 43105, 2016 WL 1273160, at *11 (C.D. Ill. Mar. 31, 2016) ("It is entirely appropriate for a damages expert to assume liability for the purpose of his or her opinion. To hold otherwise would be illogical.") (quotations omitted); *Luitpold Pharms., Inc. v. ED. Geistlich Sohne A.G. Für Chemische Industrie*, No. 11-cv-681, 2015 U.S. Dist. LEXIS 123591, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("[A] damages expert does not need to perform her own causation analysis to offer useful expert testimony."); *Gaedeke Holdings VII, Ltd. v. Baker*, No. CIV-11-649, 2015 U.S. Dist. LEXIS 182550, 2015 WL 11570978, at *8 (W.D. Okla. Nov. 30, 2015) ("Proof of causation often comes from fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages.").

[5] Pursuant to Fed. R. Evid. 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

*Ins. Co.*, No. 2:21-cv-470, 2021 U.S. Dist. LEXIS 203552, at *5, 2021 WL 4929334 (W.D. La. Oct. 20, 2021) (taking judicial notice of reported wind speeds of three hurricanes as reported by National Weather Service); *Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2021 U.S. Dist. LEXIS 96359, *17 (S.D. Fla. May 18, 2021) (taking judicial notice that Hurricane Irma struck South Florida on September 10, 2017) (citing National Weather Service, Hurricane Irma Local Report/Summary (available at https://www.weather.gov/mfl/hurricaneirma)). This is exactly the type of data on which Rothbart relies, and of which the Court could separately take judicial notice. *See* Rothbart Decl., ¶¶ 69-71. Neither Mr. Rothbart nor the Court need be meteorologists to understand reports of past weather events. Accordingly, this Court should find that Mr. Rothbart is qualified.

### C. Mr. Rothbart's methodology is reliable.

To meet the reliability requirement, an expert's opinion must be based on a scientifically valid methodology. *drix*, 609 F.3d at 1195; *see also* Fed. R. Evid. 702(c) (the expert's testimony must be "the product of reliable principles and methods"). The reliability analysis is guided by several factors: (1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593-94. The court's focus must be on the expert's "principles and methodology," not the conclusions they generate. *Id.* at 595. The test for reliability is "flexible" and courts have "broad latitude" in determining if this requirement is met. *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141-42 (1999). It is axiomatic that an expert may "properly base his testimony on 'professional study or personal experience.'" *Maiz v. Virani,* 253 F.3d 641, 669 (11th Cir. 2001).

As set out above, Mr. Rothbart's declaration contains the different formulae he would use to calculate damages based on relocation costs, overpaid rents, replacement costs, and loss of use. He opines that each calculation can be done on a class-wide basis using information from Defendants' books and records, publicly available information, and/or information provided by the engineering expert.  In another setting, this Court found that an expert's class-wide damages calculation using a formula and inputting data maintained by defendants in the ordinary course of business was "sufficiently reliable to satisfy the requirements of *Daubert.*"  *See Kunzelmann*, 2012 U.S. Dist. LEXIS 190723, *9.

Defendants contend that Mr. Rothbart's opinions are not reliable and make generalized challenges to Mr. Rothbart's opinions.  For example, Defendants contend that Mr. Rothbart's opinions should be stricken "because they are not based on sufficient facts or data and do not apply sound methodology." Mot. at 10; *see also* Mot. at 11 ("Here, there is no connection not existing facts or data."). Yet Mr. Rothbart submitted his declaration before Defendants produced a single document in discovery. *See* DE 70 (Motion to Compel).  The fact that damages cannot be calculated with precision – and certainly at this stage prior to when any discovery had been provided by Defendants – does not make his methodology unsound.  This is particularly true because "[i]n Florida the damages rule must be flexibly applied so as to provide fair compensation under the circumstances of the specific case." *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 U.S. Dist. LEXIS 80788, at *35 (S.D. Fla. Oct. 31, 2007) (citing cases). It would be inequitable for a defendant to be found liable but to avoid the consequences of its actions because damages cannot calculated with precision.  *Id.*  Thus, proof of damages will be sufficient if it provides some evidence from which the amount of damages may be satisfactorily ascertained, and exact proof of the amount of damages is not required.  *Id.* at *35-36.  The risk of

any uncertainty falls to the wrongdoer, not the injured party. *Id.* (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931)).

Defendants also object to the reliability of Mr. Rothbart's methodology by baldly contending that his report relates to residents, and not just lessees. However, the proposed Class and Subclass only include lessees, and his report is expressly intended to calculate damages for the Class. Rothbart Decl., ¶ 23. Mr. Rothbart's use of the terms "residents" and "lessees" interchangeably, and any such issue would relate to Mr. Rothbart's credibility and the weight of his testimony, not to admissibility. *See Maiz,* 253 F.3d at 669 (overruling defendants' objections to an expert's qualifications as they go to the weight and sufficiency of their opinions, not their admissibility). Accordingly, this court should find that Mr. Rothbart's methodology is sufficiently reliable.

### D. Mr. Rothbart's opinions will undoubtedly be helpful.

Next, the expert's testimony must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985); *see also* Fed. R. Evid. 702(a) (the expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue"). Relevant expert testimony "logically advances a material aspect" of the proposing party's case and fits the disputed facts. *McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004).

In this case, Mr. Rothbart's opinions will assist this Court "in determining whether a class should be certified in this matter because [his] testimony may demonstrate whether the gravamen in this matter 'is capable of class wide resolution…'" *Kunzelmann*, 2012 U.S. Dist. LEXIS 190723, *10 (denying defendants' motion to exclude expert testimony) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Defendants contend that "Rothbart's preliminary opinions simply reiterate conclusory statements regarding theories of class-wide damages…." Mot. at 11. Defendants add that his "legal conclusions are misleading and of no help to the Court." *Id.* But, again, Mr. Rothbart is not offering legal conclusions; he is demonstrating through the proffer of methodologies and explanations of the types of data that will be in Defendants' books and records that damages can be calculated on a class-wide basis, which is relevant to this Court's analysis of Plaintiffs' motion for class certification. Accordingly, his opinions satisfy *Daubert*.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendants' motion, and grant such other and further relief as is just and appropriate.

Date:  June 3, 2022

<div style="margin-left:40%">

Respectfully submitted,
By:  */s/ Robert C. Gilbert*
ROBERT C. GILBERT, FBN 561861
gilbert@kolawyers.com
DANIEL E. TROPIN, FBN 100424
tropin@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Blvd., Ste. 1100
Coral Gables, FL  33134
Telephone: (305) 384-7269


ELIZABETH A. FEGAN (admitted *pro hac vice*)
beth@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100

LYNN A. ELLENBERGER (admitted *pro hac vice*)
lynn@feganscott.com
FEGAN SCOTT LLC

</div>

500 Grant St., Suite 2900
Pittsburgh, PA 15219
Telephone: (412) 346-4104
Facsimile: (312) 264-0100
*Attorneys for Plaintiffs and the Proposed Class*

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Robert C. Gilbert
Robert C. Gilbert