**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 21-14492-CV-MIDDLEBROOKS

MICHAEL NOEL, et al.,

    Plaintiffs,

v.

MHC HERITAGE PLANTATION, LLC, et al.,

    Defendants.

_____/

## ORDER ON DEFENDANTS' *DAUBERT* MOTION

THIS CAUSE is before the Court on Defendants' Motion to Strike Expert Report of Jeffrey S. Rothbart in Support of Plaintiffs' Motion for Class Certification, filed on May 20, 2022. (DE 60). The Motion is fully briefed. (DE 75; DE 77). For the reasons explained below, the Motion is denied.

### I.    Background

Plaintiffs rent lots in Heritage Plantation mobile home park (the "Park"), where they park and reside in their mobile homes. (DE 1 ¶ 3). Defendant MHC Heritage Plantation, LLC owns the Park, and Defendant Equity Lifestyle Properties, Inc. operates it. (*Id.*). Plaintiffs initiated this lawsuit on December 21, 2021, alleging that Defendants have failed to provide Plaintiffs with essential services for their homes, including paved streets, sewer lines, and, when it rains, an adequate storm drainage system. (*Id.*). Plaintiffs allege that this failure has caused personal injuries and property damage, and they assert claims for breach of contract, breach of the covenant of quiet enjoyment, negligence, private nuisance, and trespass. (*Id.* at 12). They seek relief both for

themselves and on behalf of "[a]ll persons who leased a lot in the Heritage Plantation mobile home park within the applicable statute of limitations." (*Id.* at ¶ 95).

On May 6, 2022, Plaintiffs filed a Revised Motion for Class Certification. (DE 50). In support, they attached an expert report by Jeffrey S. Rothbart, who is "the Managing Member of Real Estate Expert Witnesses, LLC" and has "over 19 years of institutional, commercial and residential real estate experience, including, but not limited to, valuation, acquisitions, development, general contracting, equity and debt financing and lending standards, legal document review, asset/portfolio management, capital markets, leasing, dispositions, sustainability, HOA formation and administration, and brokerage" (the "Report"). (DE 50-32 at ¶ 1). Mr. Rothbart was retained "to opine based on [his] experience in the real estate industry [on] whether class-wide damages can be calculated for residents of a mobile home park where promised infrastructure or services were not provided by the mobile home park's owners or operators." (*Id.* at ¶ 12). He concludes that "[c]lass wide-damages can be calculated where Defendants failed to maintain or repair infrastructure in the Park, affecting all Class members," based on his opinions that: (1) costs to move the Class's mobile homes can be calculated on a class wide basis; (2) rental overcharges can be calculated on a class wide basis; (3) damages for diminution in value or replacement costs can be calculated using data available on a class wide basis; and (4) damages for loss of use can be calculated using data available on a class wide basis. (*See generally* DE 50-32).

In the present Motion, Defendants seek to strike the Report, arguing that it is flawed in several respects and fails to satisfy the *Daubert* standard. They argue that Mr. Rothbart is not qualified as an expert because he has no training or experience in relocating used mobile homes, nor in analyzing the costs associated with maintaining and repairing a storm water system. (DE 60 at 4–5). They point out that Mr. Rothbart has not performed any analysis of the data or facts related

to damages allegedly suffered by the Plaintiffs in this action, instead "simply render[ing] flawed legal conclusions without citation to a single authority regarding the types of damages he believes class members will be entitled to and the method he thinks should be used to calculate them," and that this makes his report both unreliable and unhelpful. (*Id.* at 3). Plaintiffs respond that Mr. Rothbart's Report satisfies all three *Daubert* criteria. They argue that he is qualified based on his experience in the real estate industry, and that his formulas are reliable and will help me ascertain whether damages may be calculated on a class wide basis in this matter.

## II.    Legal Standard

The framework set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) governs the admissibility of expert testimony. This standard applies at the class certification stage. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011) (holding that it was error for a district court to refuse to undertake a full *Daubert* analysis at the class certification stage when the situation warrants it). The party seeking to introduce the expert testimony bears the burden of demonstrating its admissibility by a preponderance of proof. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The inquiry envisioned by Rule 702 is a flexible one, in which federal judges perform a "gatekeeping role" to ensure that speculative and unreliable opinions do not reach the jury. *Daubert*, 509 U.S. at 594–95, 597.

3

The Supreme Court has held that this basic gatekeeping obligation and *Daubert*'s general principles apply to *all* expert testimony, not just testimony that is classified as scientific. *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999). Notwithstanding, the *Kumho* court cautioned that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. . . . Too much depends upon the particular circumstances of the particular case at issue." *Id.* at 150 (internal citations and quotations omitted). Accordingly, for nonscientific expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. . . . [A] trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152.

The Eleventh Circuit engages in a three-part inquiry to determine the admissibility of expert testimony under Rule 702, considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Quiet Tech. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340–41 (11th Cir. 2003) (internal citations omitted). "A district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience." *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (internal quotation marks omitted). Further, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).

4

### III. Discussion

#### A. Qualifications

Defendants first assert that Mr. Rothbart is not qualified because he is "at best . . . an expert in commercial real estate" and "lacks the requisite knowledge and experience to serve as an expert in this case involving residential mobile homes, stormwater systems in mobile home communities, or meteorological events." (DE 60 at 8). Mr. Rothbart has stated that he has "19 years of institutional, commercial and residential real estate experience." (DE 50-32). It appears that he has worked in the field of real estate in various capacities, "including as an attorney, research director, principal, managing director, vice president of finance and asset management, vice president of capital markets, general counsel, law professor, and expert witness." (DE 75 at 7). It is true that Mr. Rothbart does not have experience specifically with residential mobile homes or stormwater systems in mobile home communities. But I am not convinced that he needs to. An expert's experience need not precisely match the matter at hand. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). Here, Mr. Rothbart's opinion primarily outlines different methodologies for calculating damages related to relocation costs, overpayment of rent, replacement costs, and loss of use for real property. I am persuaded that his real estate background renders him qualified to opine on these methodologies, even though his experience is not specific to mobile homes.

#### B. Reliability

Defendants next argue that Mr. Rothbart's opinions are not reliable. The "reliability prong sets out four guideposts that a district court may consider in assessing the reliability of the expert testimony, which include, but are not limited to: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the

technique has been generally accepted in the proper scientific community." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Frazier*, 387 F.3d at 1262 (citing *Kumho Tire*, 526 U.S. at 152). An expert may also "properly base his testimony on 'professional study or personal experience.'" *Maiz*, 253 F.3d 641, 669 (11th Cir. 2001).

Defendants argue that the Report should be stricken because it is not based on sufficient facts or data, does not apply sound methodologies, and is replete with improper, and sometimes incorrect, legal conclusions. Defendants further contend that the Report should have relied on facts and data from this case because Plaintiffs solicited questionnaires from putative class members before filing it and thus had particularized information available. But as Plaintiffs point out, Mr. Rothbart submitted his Declaration before Defendants produced any discovery. (*See* DE 70). It is true that Mr. Rothbart did not input any case-specific numbers into the formulas or calculations contained in his report. But this appears to reflect the procedural posture of when the Report was filed—that is, before significant discovery was underway—rather than a flaw in Mr. Rothbart's methodologies. Mr. Rothbart has set forth methodologies for calculating damages due to relocation costs, overpayment of rents, replacement costs, and loss of use based on his professional real estate experience. He has explained that the inputs for these formulas will be contained in Defendants' books and records, and from data available in the real estate industry. This is sufficient to satisfy the reliability prong under *Daubert*.

Defendants also object to Mr. Rothbart's Report under this prong because: (1) it does not distinguish between residents and lessees, and Defendants contend that this distinction is material to the class certification analysis because certain damages will only apply to certain categories of

residents; and (2) it incorrectly applies Florida law with respect to the calculation of damages for diminution in value. Defendants' objections are well taken. However, I find that they cut more to the *weight* that should be afforded to Mr. Rothbart's opinions than to their *admissibility* under *Daubert*.

### C. Helpfulness

Finally, Defendants argue that Mr. Rothbart's opinions are not helpful. "Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63. "Proffered expert testimony will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.*

Defendants argue that the Report "simply reiterate[s] conclusory statements regarding theories of class-wide damages that Plaintiffs' counsel argues in their complaint," and that it is therefore not helpful to the Court. (DE 70 at 11). Plaintiffs respond that the Report is helpful to the Court because it speaks to the question of whether damages can be calculated on a class wide basis, thus rendering this matter capable of a class wide resolution. (DE 75 at 12). I agree with Plaintiffs. At the class certification stage, Mr. Rothbart's Report is helpful to the extent that it offers methods, based on Mr. Rothbart's professional experience, for calculating damages on a classwide basis using information contained in Defendants' records and data available in the real estate industry. Of course, in determining what weight to give Mr. Rothbart's opinions, I will consider their weaknesses as identified by Defendants. But none of those weaknesses rise to a level that supports excluding the Report under *Daubert*, and Defendants' Motion is therefore denied.

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1) Defendants' *Daubert* Motion (DE 70) is **DENIED**.

**SIGNED** in Chambers in West Palm Beach, Florida, this 22nd day of June, 2022.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE